IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIAN S. YEATON, #275680            :
                                    :
        v.                          :  CIVIL ACTION NO. L-03-3093
                                    :
M.D. JEFFREY BRIGGS, et al.         :
Sued in their individual and official capacities  :

## MEMORANDUM

This is a § 1983 civil rights action. The Plaintiff, Brian Yeaton ("Yeaton"), has been a Maryland Division of Corrections ("DOC") inmate since 1998. In his three count complaint, Yeaton claims that (i) he has been denied constitutionally adequate medical care for back pain, gastrointestinal problems, and Hepatitis C ("HCV"), (ii) the DOC failed to protect him from assaults from other inmates in 2002, and (iii) the DOC impeded his access to the courts by refusing to make copies of a pleading that he filed in 2004 and by denying him access to the law library when he was on segregation in 2004.

Now pending are motions to dismiss or for summary judgment filed by the "State Defendants"[1] and the "Medical Defendants."[2] The motions have been fully briefed, and Yeaton has been afforded a full opportunity to substantiate his claims. No hearing is necessary.[3] In a

---

[1] The State Defendants' first Motion to Dismiss or for Summary Judgment was denied without prejudice based upon the filing of Plaintiff"s Amended and Supplemental Complaint in 2004.

[2] There are 20 defendants. The "Medical Defendants" are two private physicians who are under contract with the Maryland Department of Safety and Correctional Services ("DPSCS"). The "State Defendants" include the DPSCS and DOC and the individually named prison officials and staff members. The docket shall be amended to reflect the correct names of State Defendants Briggs, Barnhart, Boyd, and Langenstein.

[3] The State Defendants did not brief Yeaton's lack of access claim. Nevertheless, given the appropriate legal standard, it is clear that Yeaton cannot prevail on that issue.

separate order, the Court will grant the motions and dismiss the case.[4]  As is more fully explained herein, Yeaton falls far short of proving a constitutional violation.[5]

With regard to Count One, Yeaton's extensive medical records shows that the healthcare personnel responded to his complaints by providing him with regular examinations, evaluations, diagnostic tests, and treatments.  With regard to Count Two, Yeaton was involved in minor scuffles with other inmates in 2002.  The record demonstrates that the DOC had no prior notice that these inmates would pose a threat to him and that his injuries were de minimis.  With respect to Count Three, Yeaton's "lack of access" was confined to a short period of time.  His filings in this case demonstrate that he has been fully able to develop his claims factually and legally.

The Court shall examine each of Yeaton's claims under the applicable summary judgment and Eighth and Fourteenth Amendment standards.

## I.   Motions for Summary Judgment

### A.   Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to

---

[4]  Service of process was not effected on Defendant Lightner.  (Docket No. 61).  Further, while it appears that Defendant Nusbaum was served with the Complaint and summons (see Docket No. 60), he did not file an answer.  Given the findings of the Court, the claims against these State Defendants shall be dismissed.

[5]  Yeaton asks this Court to take supplemental jurisdiction over "state tort claims." (Docket No. 28, p. 2).  In light of the decision with regard to Yeaton's various § 1983 claims, this Court declines to exercise its discretionary authority to take pendent jurisdiction over any state law claims.  See 28 U.S.C. §1367(c)(3); see also Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. See Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

**B.     Medical Care**

Like many inmates, Yeaton presented prison healthcare personnel with a number of medical problems stemming from drug abuse and life on the streets. When Yeaton was admitted to the DOC in 1998, his medical history included an anxiety disorder, HCV caused by intravenous drug abuse, gastrointestinal problems, and chronic lower back pain. In order to succeed on his Eighth Amendment deliberate indifference claims, Yeaton must prove that he has a serious medical condition. See Hudson v. McMillian, 503 U.S. 1, 9 (1992); Estelle v. Gamble, 429 U.S. 97, 105 (1976); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Second, Yeaton must show that Defendants knew that there was a risk of harm if the condition did not receive treatment, but nonetheless ignored that risk.[6] Except in unusual circumstances not presented here, a claim regarding a disagreement between an inmate and medical personnel over the diagnosis or course of treatment generally does not state a cognizable constitutional claim under the Eighth Amendment. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Yeaton's medical claim involves three of his conditions, which will be addressed seriatim.

**i. Colonoscopy**

Yeaton began complaining of pain in his abdomen in 1999. Medical personnel diagnosed his condition as irritable bowel syndrome ("IBS"), and treated Yeaton with a regimen that included

---

[6] See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (prisoner must prove that the health care provider "knows of and disregards an excessive risk to inmate health and safety; the [healthcare provider] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Bentyl (to prevent spasms), Hydracil (a fiber laxative), and barium enemas. Yeaton's symptoms persisted despite regular treatment, and in 2003 the doctors ordered a colonoscopy, which disclosed small internal hemorrhoids and one small polyp that was removed and proved benign.

Yeaton's dissatisfaction focuses on the failure of medical personnel to prescribe the colonoscopy until 2003, three years after he presented with abdominal pain. This complaint falls far short of the deliberate indifference proscribed by the Eighth Amendment. From a legal standpoint, the case law makes clear that a mere disagreement concerning the proper course of treatment is not actionable. Yeaton's claim also suffers from fatal factual flaws. The record shows that the doctors scheduled Yeaton for a colonoscopy in 2000, but he refused to agree to the procedure. Yeaton has also failed to show that an earlier colonoscopy (and the removal of a small benign polyp) would have had any effect on his condition, which he suffers from to this date. Yeaton's records show that prison medical personnel were not indifferent to his condition. They regularly evaluated Yeaton and prescribed a number of treatments to address a condition that has proven to be intractable.

### ii.  Back Pain

Yeaton suffered a work-related injury and underwent back surgery in 1996. After Yeaton's admission to the DOC in 1998, lumbosacral spine x-rays were taken in November,1998, May, 2004, and February, 2005. The radiology reports showed disc narrowing, lower lumbar dextrocurvature, and mild degenerative changes. Yeaton's condition was assessed as a mild case of degenerative joint disease resulting from his 1995 fall and 1996 surgery. He was placed on a regimen of  Naproxyn, Indocin, and Prednisone and referred to the pain clinic. The off-site pain consultant, Dr. Santiago, recommended steroidal injections, Bextra, Skelaxin, and a TENS unit for treatment of pain. The steroidal injections were carried out. The prison physician substituted Naproxen and Robaxin for the Bextra and Skelaxin due to a potential interaction with Yeaton's anxiety medication.

The gravamen of Yeaton's complaint is that he was not referred to an orthopedic surgeon or given the precise medication prescribed by Dr. Santiago. The claim fails to meet the Eighth Amendment standard for deliberate indifference. Yeaton's disagreement with Dr. Tessema's course of care is not actionable. His claim also suffers factually as he has offered no evidence that referral to a specialist or receipt of the exact drugs prescribed by Dr. Santiago would have had alleviated his back pain. Healthcare personnel did not ignore his ailment. The medical record shows that Yeaton was given several lumbar x-rays, diagnosed with mild degenerative joint disease, and provided non-steroidal anti-inflammatory drugs ("NSAIDs"), muscle relaxers, and steroidal injections for his pain.

### iii. HCV

Hepatis is an inflammation of the liver usually caused by a viral infection. HCV is one of several Hepatitis viruses. The DPSCS has developed a protocol for treating HCV. When asymptomatic, the HCV prisoner is monitored through physical examinations and liver function tests ("LFT"). If symptomatic, the HCV prisoner's condition is evaluated with abdominal ultrasound tests, Magnetic Resonance Imaging, and a liver biopsy. The doctors are at liberty to prescribe medication if, in their opinion, it is clinically warranted.

Yeaton was diagnosed with HCV in 1996. Records indicate that he is basically asymptomatic. His LFTs are not sufficiently elevated to cause any immediate medical concern. Yeaton's HCV is being monitored by medical personnel pursuant to the DPSCS protocol. He disagrees with this protocol and seeks the treatment (genotype testing, liver biopsy, vaccinations, and drug therapy) he would receive were he symptomatic.

The Eighth Amendment does not entitle Yeaton to prescribe his own course of treatment. He offers no proof that the DPSCS protocol is inadequate. To the contrary, healthcare personnel have pointed to medical literature demonstrating that the protocol is sound and comports with accepted medical standards. Thus, there is no evidence that healthcare personnel or the DPSCS are cutting

corners.  Yeaton's complaint, must, therefore, be rejected under the principle that a mere disagreement between an inmate and a physician over the inmate's medical care does not state an Eighth Amendment claim.

### C.  Failure-to-Protect

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates.  To prove his failure-to-protect claims Yeaton must show (i) that the harm he suffered was objectively serious, and (ii) that prison officials acted with deliberate indifference.  See Farmer v. Brennan, 511 U.S. at 834.  Deliberate indifference in the context of a prisoner failure-to-protect claim requires that Defendants "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.  Unless prison officials draw the required inference, they do not act with deliberate indifference, even when their actions violate prison regulations or can be described as the result of "gross and extreme negligence." Rich v. Bruce, 129 F.3d 336, 339-40 (4th Cir. 1997).[7]

Yeaton was involved in a fracas with inmates in July and August of 2002.[8]  He neither submitted requests (either formal or informal) to have the two combatants placed on his enemies' list nor did he request protective custody prior to the incidents.  After the August, 2002 incident, Yeaton filed an "administrative remedy" which named particular enemies and sought a protective assignment

---

[7]   An Eighth Amendment failure-to-protect claim may be dismissed when the prisoner fails to demonstrate that the injuries he sustained were more than de minimis.  See  Luong v. Hatt, 979 F.Supp. 481, 486 (N.D. Tex. 1997), see also Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (relying on Eighth Amendment jurisprudence, court holds that physical injury required by 42 U.S.C. § 1997e(e) must simply be more than de minimis).

[8]   Yeaton was involved in three minor altercations with inmates in March and December of 2001. On December 29, 2001, he submitted an "administrative remedy" speculating that future incidents were likely because of his past scrapes.  Prison personnel discussed the matter with Yeaton at a January 10, 2002 segregation review, but because Yeaton identified no specific enemies he remained on administrative segregation and was not transferred.

6

away from them. He was placed on administrative segregation and ordered transferred to another medium security facility. After both incidents, he was examined by medical personnel and treated for slight bruising to his head and shoulder, bursitis, and an abrasion to his right elbow.

Yeaton's altercations with other inmates are well documented. The record discloses no information that would have alerted the State Defendants prior to the incidents that Yeaton was at risk of harm beyond the background risk existing at any prison. Further, the injuries he suffered as a result of the skirmishes were not significant. Yeaton's complaint, therefore, fails to hit the Eighth Amendment mark for demonstrating deliberate indifference on the part of the State Defendants.

### D. Access-to-Courts

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Bounds v. Smith, 430 U.S. 817, 825 (1977); Hudspeth v. Figgins, 584 F.2d 1347 (4th Cir. 1978). The Supreme Court clarified the Bounds decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. See Lewis v. Casey, 518 U.S. 343, 349 (1996). According to the Lewis Court, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Id. at 355.

Yeaton specifically complains that prison personnel failed to make copies of the opposition that he filed in this case in January, 2004. (See Docket No. 19). He further claims that while on segregation Librarian Lightner did not provide him the law books he requested. Yeaton's claim fails because neither incident hampered his case. All his papers have been docketed. Although Yeaton was temporarily without access to the law library, this did not hinder his ability to articulate his

claims, as is demonstrated by his many filings in this case.[9]  Consequently, this claim shall be dismissed.[10]

**II.    Conclusion**

For the foregoing reasons, the Court will, by separate Order:

(i) DIRECT the Clerk to AMEND the docket as so indicated;

(ii) GRANT Defendants' Motions for Summary Judgment;

(iii) DISMISS Yeaton's access-to-courts claim;

(iv) DIRECT that the Complaint against Defendants Lightner and Nusbaum BE DISMISSED;

(v) GRANT Yeaton's Motion for Copy Work; and

(vi) DIRECT the Clerk to CLOSE the case.


Dated this 13th day of March, 2006.


_____/s/_____
Benson Everett Legg
Chief Judge

---

[9] Yeaton alleges that the failure to provide law books prevented him from citing state statutes or bringing state tort claims against Defendants.  (Paper No. 28, p. 29).  In light of this Court's decision to decline to take pendent jurisdiction over any state law claims, the undersigned finds that Yeaton has failed to demonstrate injury.

[10] Yeaton has recently filed a Motion for Copy Work, asking to be provided a copy of the docket sheet.  This request shall be granted.